## GLOBE & RUTGERS FIRE INS. CO. v. BAYLEN STREET WHARF CO.
### No. 5716.

Circuit Court of Appeals, Fifth Circuit.
Feb. 25, 1930.

Haines H. Hargrett, of Atlanta, Ga., W. H. Watson, S. Pasco, Jr., and C. J. Brown, all of Pensacola, Fla. (S. Pasco, Jr., of Pensacola, Fla., Haines H. Hargrett, of Atlanta, Ga., Watson & Pasco & Brown, of Pensacola, Fla., and Spalding, MacDougald & Sibley, of Atlanta, Ga., on the brief), for appellant.

John M. Coe, Philip D. Beall, and Francis B. Carter, all of Pensacola, Fla. (Philip D. Beall, F. B. Carter, and J. E. D. Yonge, all of Pensacola, Fla., on the brief), for appellee.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

SIBLEY, District Judge.

The insurance policy here involved, dated February 4, 1925, insured for five years against loss to the amount of $7,500 by windstorms "one two-story frame and iron-clad, composition roofed building, with adjoining and connecting additions, including foundations and irremovable fixtures, while occupied as a boat house, and situate east side of South Baylen Street, south of Cedar Street, in Pensacola, Florida, shown in Sanborn, 1907, map, sheet 9, block 7, boat house." Among the printed conditions was one that the company "shall not be liable for * * * temporary or board roof additions, nor for loss, or damage to buildings (or their contents) in process of construction or reconstruction, unless same are ∙ entirely enclosed and under-roofed." There is no condition against adding to, repairing, or changing the insured premises. The boathouse at the date of the policy was an extensive structure, and had had added to it on one end an ironclad room adjoining and connecting with it. No other addition was then in course of erection or specially contemplated. In the summer of 1926, a large addition or extension was made on the other end, similar to the main building in construction, design, and use, and costing $6,000. Thereupon the insured approached the company's agent who had issued the policy, seeking to adjust this insurance, along with his fire insurance, to the change. This agent made changes in the fire policies, but none in the policy here in question, stating that it needed no change as it covered the addition already, and because of the 50 per cent. coinsurance clause the property would not stand any additional amount of insurance. Soon afterwards a storm occurred, doing great damage to the new structure and some to the old one. The company admitted liability for the latter, but denied liability for the former. The controlling question is: Was the new structure covered by the policy?

Generally, a contract for insurance on described property refers to the identical property then in existence and described. But a different intention may appear from the language of the contract or the circumstances, and, in case of ambiguity, parol evidence may be resorted ∙ to, as in the case of other ambiguous written instruments. Home Ins. Co. v. Baltimore Warehouse, 93 U. S. 541, 23 L. Ed. 868; L'Engle v. Scottish Union Ins. Co., 48 Fla. 83, 37 So. 462, 67 L. R. A. 581, 111 Am. St. Rep. 70, 5 Ann. Cas. 748; Maril v. Connecticut Ins. Co., 95 Ga. 604, 23 S. E. 463, 30 L. R. A. 835, 51 Am. St. Rep. 102. In Royal Ins. Co. v. Miller, 199 U. S. 353, 26 S. Ct. 46, 49, 50 L. Ed. 226, the insurance was upon the "stock of sugar and molasses deposited in the sugar manufactory" on a described estate. Although at the date of the policy there were such goods there, the circumstances that there was also a growing cane crop, that the insurance began to apply only two months later, and that no specific quantity of sugar was named, produced a construction that additions to the stock were also to be covered. In the case of realty particularly described, it is said that policies are of two classes: First, those making no mention of additions, and, second, those mentioning them, and that the former exclude from the insurance structures made subsequent to the policy. Old Colony Ins. Co. v. Berryman Realty Co., 193 Ky. 7, 234 S. W. 748, 21 A. L. R. 292.

The present policy is of the latter class. The words in the description, "with adjoining and connecting additions," might be applied to the room which had already been added, but they cannot be confined to it, for they are plural. They seem as capable of application to future as to past additions. If the intent were to confine the in-

surance to the building exactly as it stood, it might have been fully described, and would have been, by omitting all reference to additions. The exclusion of temporary and board-roof additions from the liability (necessarily to be made in the future, for there were none such at the time) also lends color to the contention that all other additions were to be included; and the reference to construction and reconstruction of buildings indicates that things were not necessarily to remain static. These provisions are all in the printed form, but they cannot be thought meaningless. They should have been stricken out if they were not to aid in defining the contract. The boathouse was a series of stalls to house small boats, was easily capable of extension, and likely to be extended if its business prospered. The term of the policy was five years. There is nothing in the policy or the circumstances to render it unlikely that extension was intended to be provided for. On the rule that ambiguities in insurance policies prepared by the insurer are to be solved in favor of the insured, this addition should be held to be included in this policy. L'Engle v. Scottish Union Ins. Co., 48 Fla. 83, 37 So. 462, 67 L. R. A. 581, 111 Am. St. Rep. 70, 5 Ann. Cas. 748; First National Bank v. Ins. Co., 95 U. S. 678, 24 L. Ed. 563.

The transaction with the agent after the addition was built confirms this result. His decision, made before the loss, that the policy covered the new structure, is strongly indicative that such was his original understanding of the policy. But it is urged that he is not an agent authorized to construe policies or make admissions of liability for the company. The agent had general written authority "to issue and make indorsements on policies of insurance in the State of Florida." This authority was limited by a provision of the policy: "No officer, agent or other representative of this Company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed on or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power, or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto."

It is not here claimed that the agent has waived any condition or provision of the policy without indorsement. The whole contract is still in the writing; its meaning alone is in dispute. This agent made it, and what he meant by it is what his company meant by it. He had full authority to remake it by making a new contract in its place. This he might even do in parol; no statute prohibiting. Relief Ins. Co. v. Shaw, 94 U. S. 574, 24 L. Ed. 291. When he was approached by the insured for alteration or substitution of this policy, it was for the purpose of doing business with him within the scope of his authority. What resulted was not a naked declaration or admission by the agent, but an act within his agency. After full examination and consideration of the policy, he recognized it as covering the entire building sought then to be insured. Had he, without new premium, delivered another policy written in words identical with this one, the company would assuredly have been bound. His action was equivalent thereto. Insurance companies have been held bound where authorized agents promised orally to make indorsements or changes under similar circumstances, but did not. Hartford Fire Ins. Co. v. Buckwalter Lumber Co., 116 Miss. 822, 77 So. 798; Franklin Fire Ins. Co. v. Franks, 145 Miss. 494, 111 So. 135. This agent did all he was to do, and lulled the insured into inactivity, if any other action was necessary. The company must be held bound by the policy as its authorized agent made and intended it.

The judgment in favor of the appellee was right, and is affirmed.